[Crim. No. 1825.   Fourth Dist.   Sept. 26, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. RONALD FREDERICK FOOTE et al., Defendants and Appellants.

James M. Lane, under appointment by the District Court of Appeal, for Defendants and Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Louis L. Selby, Deputy Attorney General, for Plaintiff and Respondent.

GRIFFIN, P. J.—Defendants, Elias Lopez, Ronald F. Foote and Domingo A. Hernandez, were charged with violation of Health and Safety Code, section 11530 (possession of marijuana) on August 12, 1961. Defendant Foote was also charged with a prior conviction for burglary first degree. He admitted the prior conviction. Each defendant pleaded not guilty to the charge and the jury found all guilty as charged. All defendants appealed from the judgment. Apparently, defendant Lopez abandoned his appeal and it was dismissed. The only claim of the other defendants on this appeal is that the marijuana found in a 1952 black and white two-door Cadillac sedan was the fruit of an unlawful search and seizure and was erroneously admitted in evidence over objection.

## FACTS

About 2 a. m. on August 12, 1961, two sheriff's patrol cars were parked in Solana Beach. Sergeant Witcraft was in one of them and Deputies Lindberg and Jones were in the other. About that time, Sergeant Witcraft observed a 1952 Cadillac which he identified as belonging to defendant Lopez. He notified the deputies in the other sheriff's car by radio that the vehicle was coming in their direction and asked them to stop it. Neither Witcraft nor the deputies knew who was driving the Lopez car. However, they had observed Lopez in the vehicle on two prior occasions and each time he had been unable to produce a valid operator's license. (He was not driving the vehicle on either of these two occasions.) On one prior occasion, his girl friend was driving it and she had no operator's license. Defendant was warned not to drive his car without an operator's license. The officers had checked with the Department of Motor Vehicles and had been told that there had been no application by Lopez for a driver's license. About a month or two before this date, Lindberg had learned from other officers that there was a hole 3 inches in diameter in the center of the rear seat cushion of the Cadillac and that this opening was clear through the seat and floorboards, exposing the car's driveshaft. By this means, it was possible to facilitate disposal of marijuana when pursued by police officers. The officers also knew that Lopez was a former narcotics user.

The deputies stopped the Cadillac and approached it from the rear, with their car lights shining directly on the Cadillac. Foote emerged from what appeared to be the driver's position and approached Lindberg, displaying a purported driver's license which proved to be only an identification card of some sort. He had no operator's license. While he was looking at the identification card, Lindberg noticed a movement in the back seat of the Cadillac, next to him. Lopez and Hernandez had been sitting about a foot apart in the center of the rear seat, and the officer observed that they were now sitting to the extreme sides of the seat, with their hands down towards the center of the seat. The rear window of the Cadillac was rolled down about 4 or 5 inches. Lindberg shined his flashlight in the window and also looked in. He smelled what seemed to him to be marijuana and observed a piece of paper sticking out from the hole in the rear seat. Around the hole there were seeds, fragments and green vegetable matter which looked like marijuana. Hernandez and Lopez and two other occupants of the vehicle were told to get out. The unnamed occupants were juveniles and apparently were not charged in the instant proceeding. The Cadillac and all the occupants were searched. Marijuana was found in Lopez's jacket pocket and in, around and under the car, and on the ground. Both Hernandez and Foote denied having anything to do with the marijuana. Lopez did not testify.

According to the testimony, Lopez's automobile was searched before by these or other officers and Lopez was interrogated about his use of narcotics.

The defense contends that the arrest was not supported by probable cause and therefore it was unlawful and the search conducted thereunder was unauthorized; that stopping a car amounts to an arrest and that everything that took place thereafter was unlawful; that even if the arrest was lawful, the search which followed was not reasonably related to the offense for which the defendants were arrested (driving without a license) and therefore the search was unreasonable; that the asserted probable cause was a mere subterfuge and actually the officers stopped the car in order to search it because they suspected, without any reasonable basis, that it was being used to transport marijuana.

The People argue that no arrest or search took place prior to the time the officer (Lindberg) looked into the rear seat of the car and smelled what appeared to him to be marijuana and that he then saw the marijuana, had knowledge that a felony

was being committed and therefore had reasonable grounds for arresting the defendants and searching their clothing and the vehicle; that under the circumstances the officers had reasonable grounds for stopping the Lopez vehicle to discover whether or not the driver had a valid operator's license and that Deputy Lindberg was therefore fulfilling a legal duty when he observed the marijuana in plain sight in the rear seat of the vehicle.

Defendant Foote testified that he had no operator's license, but he stated that he appeared at the Escondido office of the Department of Motor Vehicles and applied for a license, but was unable to procure the certificate because he was required to wear glasses and he stated that he did not have them with him; that he was also required to bring his father with him to sign for such a license and that he agreed to do so but never got around to it. He claims that the department gave him some sort of receipt indicating that he had so applied for a license, but he did not produce it. It does not appear that any one of the occupants of the car had an operator's license.

As to probable cause, the officers testified that they did have previous knowledge that Lopez owned this car for about one year prior thereto but it was registered in his sister's name and that Lopez had no operator's license up to one month prior to this occasion; that defendant Lopez let other persons without operator's licenses drive the car and that Lopez himself had been operating it at times. There was evidence that prior to this occasion there had been several burglaries committed in the neighborhood of Rancho Santa Fe and that defendant Lopez lived near there in some Mexican village, and the officers were familiar with his car and found it parked nearby, unoccupied; that they investigated it and supposedly this was the time they discovered the hole in the rear seat where narcotics could be disposed of in a chase with officers.

On this last occasion, one officer saw the Cadillac being operated in the residential district at 2 a. m. He ordered the other officers to stop the car. These officers, not knowing who was driving, pursued the vehicle about three blocks. The Cadillac was traveling about 20 miles per hour and the officers' car was traveling about 35 miles per hour in pursuit. It was not until defendant Foote stepped out from the driver's seat that the officers learned that it was not defendant Lopez driving the car.

We are convinced, as was the trial court, that there was sufficient probable cause shown to stop the car to see if

Lopez was driving the Cadillac at this time, or if he was again allowing an unlicensed operator to drive it, and that there was probable cause to inquire about the activities of defendant Lopez and the occupants of the car at that hour of the night. While Officer Lindberg was examining the certificate presented by the driver, and before any arrest could be made, the movement in the rear seat of the car attracted his attention and he smelled the fumes of marijuana and saw evidence of the commission of a felony before any search was made of the car. Seeds and plant matter were found on the floor of the Cadillac, both front and back, and in the clothing taken from each defendant. There was no conflict in reference to this evidence, much of which was taken out of the presence of the jury in an endeavor to show probable cause and again repeated before the jury after overruling of the objection to the evidence being admitted.

Defendant Foote then testified generally that Lopez came to his home in Solana Beach in the Cadillac about 6:30 that evening and no one was with him; that he then left with Lopez and went to get two other boys and they bought some beer at a liquor store, drank it and drove to Rancho Santa Fe, and while sitting there they drank some more and then went to Vista; that at Vista Tommy Hernandez, one of the juveniles and brother of defendant Hernandez, started to drive and that later he (Foote) took over to drive and when about one-half mile from his home they were stopped by the officers as related. He said he showed the officers his identification card, a "merchant mariner's document from the Coast Guard and a draft card," and that he had never before observed the sack which the officers took from the car. He claimed that the arrest was made after the search. The officers claimed otherwise. ██ A search made as an incident to a lawful arrest, based on reasonable cause to believe that the person arrested has committed a felony, is a lawful search though made without a warrant and though it occurs before rather than after the arrest. (*People* v. *Hammond,* 54 Cal.2d 846 [9 Cal.Rptr. 233, 357 P.2d 289].)

Hernandez denied knowing of the presence of the marijuana, although he was seated next to the bag and material found in the back seat.

It is the rule that there is nothing unreasonable in an officer's questioning persons outdoors at night under certain conditions. (*People* v. *Simon,* 45 Cal.2d 645 [290 P.2d 531].)

Defendants argue throughout their brief that the test of

probable cause must be applied at the point of time when the officers first saw the Cadillac driving by, and suggest that there was not probable cause for an arrest at that moment, and, therefore, everything which followed was unlawful.

It is apparent that the officers had the right to stop the vehicle under the circumstances related. (Veh. Code, § 14606; *People* v. *Carnes,* 173 Cal.App.2d 559, 566 [343 P.2d 626]; *People* v. *Davis,* 188 Cal.App.2d 718 [10 Cal.Rptr. 610]; *People* v. *Ellsworth,* 190 Cal.App.2d 844 [12 Cal.Rptr. 433].)

The cases hold that to see what is in plain sight does not constitute a search. (*People* v. *Murphy,* 173 Cal.App.2d 367, 377 [343 P.2d 273]; *People* v. *Carnes, supra,* 173 Cal. App.2d 559; *People* v. *Hyde,* 51 Cal.2d 152, 157 [331 P.2d 42]; *People* v. *Roberts,* 47 Cal.2d 374, 379 [303 P.2d 721].)

The fact that the officer shined his flashlight inside the car while remaining outside did not amount to an illegal search. (*People* v. *Hyde, supra,* 51 Cal.2d 152; *People* v. *Roberts, supra,* 47 Cal.2d 374.) The marijuana observed in plain sight strewn about the rear seat dictated the subsequent arrest and seizure, and the officers did not have to blind themselves to what was in plain sight simply because it was disconnected from the purpose for which they stopped the car. (*People* v. *Roberts, supra,* 47 Cal.2d 374, 379.)

This is not a case where the police force has blockaded large areas of a city, stopping all persons and automobiles from entering or leaving, as in *Wirin* v. *Horrall,* 85 Cal. App.2d 497, 499 [193 P.2d 470]. The jury and the trial court had the right to believe that this was not a case where a person clearly guilty of no offense has been arrested on a spurious vagrancy charge or on a technical traffic violation as a pretext for conducting a wholly exploratory and wide-ranging search in quest of evidence of other crimes.

Judgment affirmed.

Coughlin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 21, 1962.