[Crim. No. 11775. Second Dist., Div. Four. Aug. 18, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. WALTER WEBSTER ALEXANDER, SR., Defendant and Appellant.

T. Anthony Sanfilippo, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Elizabeth Miller and Jerold A. Prod, Deputy Attorneys General, for Plaintiff and Respondent.

FILES, P. J.—Defendant was charged with possession of marijuana for sale (Health & Saf. Code, § 11530.5) and with two prior convictions of possession of heroin, Defendant

admitted the two priors. After a jury found defendant guilty as charged he was sentenced to state prison. This appeal is from the judgment.

On October 18, 1964, Officer Billy Pool went to a house on South Amantha in Compton in response to a radio call about a missing girl. As he arrived he saw two boys in a Buick automobile drive away from the house across the street. The woman who had called the police then told Officer Pool, " 'We've been told that the man that lives there sells narcotics to juveniles. Those boys just went there, and I think they bought some narcotics.' " She pointed to the home of defendant, who lived across the street from her.

Officer Pool pursued the Buick, stopped it, arrested the boys and found loose marijuana in the car. He then had a conversation with the boys, the content of which is not disclosed by the record except that the information thus obtained caused him to go back to defendant's home.

When Officer Pool returned to defendant's home he was accompanied by three other officers. Defendant was standing in his front yard, and with him were his two sons and a 19-year-old boy named Stanmore. In answer to questions, defendant admitted he lived there, but denied that anyone had been there and left that evening, denied that he had any marijuana on the premises and denied that a boy had purchased marijuana there that evening. Officer Pool testified that he "asked him [defendant] if he minded if we searched the premises for marijuana. He stated, 'No, come on in,' and led us into the house."

According to defendant's testimony, Officer Pool said, " 'Well, then, you don't mind if we have a look around' " and three officers walked in without waiting for a reply. Defendant testified he was afraid to resist, and said nothing.

If the officers found anything illegal in the house, there is no evidence of it in the record.

After going through the house they searched the backyard. There they found three tin cans of marijuana concealed in the chimney of a barbecue. More marijuana was in another can and in a paper bag found in the weeds alongside the garage.

The officers then, according to their testimony, advised defendant of his right to counsel and his right to silence, and defendant interrupted to say he was fully aware of his constitutional rights and they didn't have to tell him. When the officers asked who owned the marijuana, defendant and the three boys all denied any knowledge of it. But after further

questioning, defendant admitted that the marijuana was his and that he had sold some that evening to a teenage boy for $3.50.

Defendant, testifying on his own behalf, denied that he had known there was any marijuana on the premises until the officers found it. He admitted on the witness stand that he had told the officers it was his, but he explained to the jury he said this only because he feared his sons would be arrested if he did not assume responsibility. He said one of his sons had previously been arrested for possession of marijuana. In court defendant denied that he had confessed to any sale of marijuana.

In the trial court defendant objected to the introduction of the marijuana on the ground that the search had been illegal. The prosecutor argued that the search was legal both because the defendant had consented, and because it was outside the house. In overruling the objection, the trial court said: "Under the present state of the law, they had a right to make a search in the location where they actually did find the contraband. If the officers had not found any contraband where they did, but had actually found it inside the defendant's house, the Court would have considerable difficulty in deciding whether or not there was a legal search, legal entry, search and seizure, but we are not faced with that.

". . . . . . . . . . . . .

"The Court is going to find that the search was a legal search and seizure was legally made by the officers, having been performed, and the contraband seized, outside of any dwelling or actually outside of any structure as that term is usually used, which, under the present state of the law, the officers have a right to do."

 The court's remarks negate any finding of consent. Where the evidence is in conflict, the reviewing court ordinarily assumes that the trial court found the preliminary facts to be in support of its ruling. But where the record shows that the trial court did not pass upon the issue, no such finding is implied. (*People* v. *Henry,* 65 Cal.2d 842, 845-846 [56 Cal.Rptr. 485, 423 P.2d 557].) Therefore, if consent was required, the search cannot be upheld in this court.

 Nor can the search be upheld as an incident to a lawful arrest, because there was no legal justification shown for arresting defendant until the marijuana was discovered in his backyard. The record fails to show that the woman on Amantha Street had any factual basis for accusing defend-

ant. ■ There is, therefore, no evidence that the arrest of the boys in the Buick was a legal arrest, despite the fact that marijuana was turned up. Thus the discovery of the marijuana in the Buick, and any statements of the boys implicating defendant, were presumptively the product of an illegal arrest (*People* v. *Bilderbach,* 62 Cal.2d 757, 763 [44 Cal Rptr. 313, 401 P.2d 921]) and cannot be offered as a legal ground for arresting defendant. (*Wong Sun* v. *United States,* 371 U.S. 471, 485 [9 L.Ed.2d 441, 453, 83 S.Ct. 407].) Therefore the search cannot be upheld upon any theory of "probable cause to arrest." (*People* v. *Reeves,* 61 Cal.2d 268 [38 Cal. Rptr. 1, 391 P.2d 393].)

. The theory relied upon by the trial court was that, irrespective of consent or probable cause to arrest, the search which turned up the marijuana was not such a violation of law on the part of the officers as to deprive the People of the fruits of the search under the principles announced in *People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513] and *Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933].

The search took place in the rear yard of a single-family residence, in which defendant resided with his sons. Within this yard, but detached from any other structure, was a barbecue or fireplace, 5 or 6 feet wide at the base, with a chimney rising 7 or 8 feet above the ground. The critical event was the discovery of marijuana leaves and seeds in metal cans which were inside the chimney. Inasmuch as we have found no decision with facts exactly like this, it is necessary to examine the basic rules, as they have been applied in other situations.

Preliminarily we must point out two limitations upon the scope of our discussion: (1) We are here concerned only with a search conducted wholly outside of any building; (2) We are talking only of entries which, apart from the official status and purpose of the officer, would be trespasses.

The Fourth Amendment to the Constitution of the United States declares: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, . . ."

Article I, section 19, of the California Constitution speaks in similar language.

In *Hester* v. *United States,* 265 U.S. 57 [68 L.Ed. 898, 44 S.Ct. 445], officers concealed themselves "50 to 100 yards away" from a house. When the defendant came out of the

house, he discovered the presence of the officers. As the defendant fled, he dropped a container of contraband whiskey, which the officers recovered. The Supreme Court said (at pp. 58, 59 [68 L.Ed. at pp. 899, 900]) : "It is obvious that, even if there had been a trespass, the above testimony was not obtained by an illegal search or seizure. . . . The only shadow of a ground for bringing up the case is drawn from the hypothesis that the examination of the vessels took place upon Hester's father's land. As to that, it is enough to say that, apart from the justification, the special protection accorded by the 4th Amendment to the people in their 'persons, houses, papers, and effects' is not extended to the open fields."

In *People* v. *Andrews* (1957) 153 Cal.App.2d 333 [314 P.2d 175], an officer approached a private home by walking from an alley through an opening in a fence, which was about 5 feet from the house. The officer then stood at a window of the house and observed narcotics paraphernalia and bindles inside. The conviction was affirmed upon two independent grounds. The first was that before approaching the premises the officer had reasonable cause to enter and arrest the occupants. The other was that, if there had been a trespass, the officer's testimony did not thereby become inadmissible, citing *Hester*.

In *People* v. *Bly* (1961) 191 Cal.App.2d 352 [12 Cal.Rptr. 542], an officer entered a backyard and seized a package which had been placed in some bushes approximately 2 feet from the rear door and alongside the porch. The contents of the package were held to be admissible, citing *Hester*.

In *People* v. *Jackson* (1961) 198 Cal.App.2d 698 [18 Cal. Rptr. 214], officers looked inside a paper bag which they found in a trash pile alongside a chicken coop in the defendant's backyard, and there found marijuana. That evidence was held to be admissible under the *Hester* decision and other cases applying that doctrine.

In *People* v. *Shields* (1965) 232 Cal.App.2d 716 [43 Cal. Rptr. 188], officers entered a fenced yard at the rear of a residence, where dismantled automobiles were seen. They also forced open a garage, which was not attached to the house, and searched it. Evidence obtained inside the garage was held to be admissible.

In *People* v. *King* (1965) 234 Cal.App.2d 423 [44 Cal.Rptr. 500], an officer went onto the front porch of a home after midnight, stooped over and peered through a 2-inch opening

in a blind. The testimony as to what he saw inside was held to be admissible.

In *People* v. *Willard* (1965) 238 Cal.App.2d 292 [47 Cal. Rptr. 734], an officer walked through an open gate into the backyard of a private residence, then stood on the step of a side door, from which location he was able to look into the bathroom, where defendant was injecting heroin.

After a careful analysis of the California decisions and those of the federal courts, the *Willard* opinion states (at pp. 307-308) : "We therefore reach this final conclusion: That looking through a window does not become an unreasonable search merely because a police officer may be on defendant's premises when he makes the observation; that the degree of privacy which defendant enjoyed in the place involved is an important factor in determining the reasonableness of the search; and that essentially the determination of its reasonableness must depend upon the facts and circumstances of the particular case.

". . . . . . . . . . . . .

"We conclude that, in the light of all the circumstances, Sergeant Hilliard at the time he made the observations in question was not on premises constitutionally protected, that his looking through the door and window did not constitute an unreasonable search, and that his conduct was not an unlawful invasion of defendant's privacy."

The structure involved in *Willard* was a duplex, and therefore the walkway between the gate and the side porch was used by persons other than the defendant and his family. But it does not appear that the decision turned upon this fact alone. Private property shared with another family is not necessarily shared with the public at large; and the porch or step where the officer stood belonged only to defendant's dwelling.

■ These six California Court of Appeal cases necessarily rest upon one proposition which is pertinent here: that the uninvited entry of a police officer on private residential property outside the house does not by itself make inadmissible the evidence obtained thereby. The *Andrews, King* and *Willard* cases do not involve a search, in the strict sense of the term. In each of these cases the officer merely observed what was in plain sight after he had arrived at his vantage point, though he could not have made his observation without going upon private property for that special purpose. In none of these cases could it reasonably be contended that the observa-

tion was a mere happenstance result of going to the door "to seek an interview."

*Bly, Jackson* and *Shields* each involves actual search, in the sense of prying into closed places. In *Bly* it was a package in the bushes; in *Jackson* it was a package in a trash pile; in *Shields* there were automobile parts, license plates and finger-prints in a backyard and in a garage.

The *Bly* and *Jackson* opinions both rely upon the "plain sight" rule to justify the discovery of a package on private premises. But in each of those cases it was necessary for the officers to open the package in order to obtain the evidence of crime. The lawful discovery of a closed package does not necessarily justify an inspection of its contents. Opening the package is a search in the constitutional sense. (*People* v. *Mikelson*, 59 Cal.2d 448, 454 [30 Cal.Rptr. 18, 380 P.2d 658].) Both the *Bly* and *Jackson* cases must be classified as decisions upholding the legality of a search upon private residential property.

The *Shields* opinion emphasizes the nonresidential[1] use of the premises searched. The court said (at p. 721): "The building obviously was being used solely for garage purposes and in conjunction with an automobile wrecking yard. It was not entitled to be regarded as an outbuilding essential to the comfort and personal well-being of a family; it had no private character for living purposes such as a house, and was not, therefore, entitled to constitutional protection."

These cases teach that a search made upon the private property which surrounds a house is not necessarily an unreasonable one. We believe the *Willard* opinion correctly states the rationale of the earlier decisions when it says ". . . the degree of privacy which defendant enjoyed in the place involved is an important factor in determining the reasonableness of the search; and that essentially the determination of its reasonableness must depend upon the facts and circumstances of the particular case."

It is defendant's contention that the entire curtilage, the area immediately surrounding the house and habitually used for family purposes, is constitutionally protected against the intrusion of police officers. But that theory cannot be reconciled with the holdings of the six California appellate decisions cited above. In each of those cases the officer came

---

[1]This was an essential distinction. In *Taylor* v. *United States*, 286 U.S. 1 [76 L.Ed. 951, 52 S.Ct. 466], a search of a garage "adjacent to" a residence was held to be illegal.

into the curtilage to find the evidence. Although those decisions preclude the adoption of defendant's theory, none of them can be said to reach the precise question presented here. Assuming it is lawful for an officer to enter the backyard to look through windows or examine the garage or packages left in the bushes, does he cross the constitutional threshhold when he thusts his arm into the chimney of the backyard barbecue?

We begin by observing that, as a proposition of almost universal truth, honest people have no need for privacy in such chimneys. Although a barbecue chimney is a part of residential (as distinguished from business) land use, it is not the kind of place where privacy is usually thought to be important. No one would ever think of storing anything in such a place unless he was hiding contraband of some sort. If it is permissible for the police to enter and inspect a residential backyard at all (and the decisions say it is), the honest householder suffers no additional inconvenience or indignity when the officer thrusts his arm into the soot of the barbecue. A rule which would draw the line there would not protect the privacy of the person, his home, office, papers or effects. It would aid only those who need convenient storage for contraband.

The search of a barbecue chimney is by no means as significant an invasion of the privacy of the home as is going upon the porch to peer through the blinds, or walking around the house to find an undraped window. By the standard developed in these cases, we cannot say that the search here was so unreasonable as to require the exclusion of the marijuana.

Once the officers had discovered what was in the chimney they were entitled to arrest the defendant and make a further search of the rest of the immediate premises. (*People v. Cockrell,* 63 Cal.2d 659, 666 [47 Cal.Rptr. 788, 408 P.2d 116].) This further search turned up the other packages which were in the weeds alongside the garage. No further justification for the admission of that evidence is required.

Defendant raises several other points, none of which requires reversal. The voluntariness of defendant's confession was ruled upon preliminarily by the trial court and submitted to the jury under a proper instruction. The evidence most favorable to the prosecution supports the finding that it was free and voluntary.

When the prosecution was about to offer the confession in evidence the court stated that it would hear the question of voluntariness outside the presence of the jury. Then this exchange occurred (the jury still being present):

"MR. DAHLSTROM: I am entitled to have that before the jury.

"THE COURT: I do not think so. If you want it, it will be outside the presence of the jury. The Court will rule on it preliminarily—if the Court should rule it is free and voluntary—then rule on it again.

"MR. FINNERTY: So that the record may be clear, your Honor's ruling is if he wants to go into it, he must go into it first outside of the presence of the jury. If your Honor then rules in favor of the People, he may then repeat it in the presence of the jury?"

Defendant now argues that the statement by the prosecutor, Mr. Finnerty, was prejudicial in that it told the jury that if the confession was received in evidence, the judge had already ruled "in favor of the People" on the issue of voluntariness.

Although we do not understand any good reason for the statement of the prosecutor, we do not regard it as ground for a new trial in this case. The problem arose initially because the defense attorney appeared to forget that the trial judge was required to proceed initially outside the presence of the jury. This doubtless prompted the court to remind Mr. Dahlstrom of this rule of constitutional law. (*Jackson* v. *Denno* (1964) 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205].) The instruction given the jury at the end of the case told them they must disregard the confession unless they themselves found it was voluntary. Upon this record we assume the jury followed the court's instruction.

This case was tried in 1965, prior to the decision in *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. The warning given by the police when defendant was interviewed is therefore measured by the standards set forth in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal. Rptr. 169, 398 P.2d 361], and *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]. (*People* v. *Rollins,* 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221].) Officer Pool's testimony[2] supports the trial court's finding that defendant was properly warned and that he waived his right to silence and to counsel when he answered the officers' questions. Although defendant claimed later that his confession was

---

[2] Officer Billy Pool testified that, when defendant was brought to the barbecue to be confronted with what the search had produced, "I advised Mr. Alexander that . . . he had a right to an attorney to be present, that he had a right to remain silent, and as I spoke those words, he interrupted me and stated that he was fully aware of his constitutional rights, that we didn't have to tell him, that he knew all about it."

untrue, he did not deny that he had been warned. ▮ Inasmuch as the court did properly submit to the jury the question of the voluntariness of the confession, it was unnecessary for the court to submit also the preliminary issue of whether the proper warning had been given. (*People* v. *Sanchez,* 65 Cal.2d 814, 826-827 [56 Cal.Rptr. 648, 423 P.2d 800].)

▮ Defendant contends that the trial court erred in excluding defendant's offer to prove that the officers had found in the kitchen a can which they believed contained marijuana seeds. Defendant's theory appears to be that the search of the house was illegal and that the illegality of the police conduct in entering the house infects the search made later in the backyard. No authority has been cited in support of that argument. We find no rational basis for thinking that the backyard search was a product of the illegal search of the house. This is not a situation like that in *Wong Sun* v. *United States,* 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407], where an illegal entry in one place led to the production of evidence elsewhere. There is no reason to doubt that the officers intended, from the outset, to search the backyard. If the search of a backyard was legal, it is not the less so because the officers did something illegal en route.

▮ Finally, defendant argues that the court should have granted his motion for a mistrial when the police officer, in relating defendant's confession, quoted defendant as saying he " 'tore a piece of tinfoil off a large piece and rolled some marijuana up in the tinfoil and sold it to the teenage boy for $3.50.' " Defendant points out that although it was material to show that defendant admitted a sale, it was unnecessary to quote that part of his statement which identified the purchaser as a "teenage boy." He argues that this element only served to inflame the jury and prejudice it against him.

The officer, in describing the confession, might well have omitted the portion which identified the purchaser as a teenage boy. But we cannot find that the reference to the youth of the purchaser prejudiced defendant here. The evidence showed beyond dispute that the police found on the premises marijuana in quantities which strongly supported the inference that it was held for sale. Defendant was indisputably the head of the household, and the only adult member. If the jury believed that he had any knowledge of the presence of marijuana, that alone would have impelled a finding of guilty of the offense charged. The fact that he had admitted selling to

somone was corroboration of an otherwise strong inference. The additional knowledge that one of his customers was a teenager, though immaterial, could not have prejudiced defendant in this context.

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.

A petition for a rehearing was denied September 8, 1967, and appellant's petition for a hearing by the Supreme Court was denied October 11, 1967.