[Crim. No. 13212. Second Dist., Div. One. Dec. 22, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT
CHARLES LEES, Defendant and Appellant.

Howard E. Beckler for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Philippe J. Monet, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was convicted of three counts of receiving stolen property (§ 496, Pen. Code); he appeals from the judgment.

On September 18, 1965, a .22 caliber revolver, serial number 83842, was stolen from the automobile of Mary Lou Robbins; on October 27, 1965, TV tube caddies and other items, including a manual, were stolen from a station wagon driven by John Smerik; and on October 28, 1965, Dr. Pierce's medical bag was stolen from his automobile.

On November 8, 1965, Officer Calderwood interviewed Mr. and Mrs. Sharaga, managers of an apartment at 464 North Stanley; from various photographs he showed to them, they identified one of defendant as the man who, under the name of Jeff Rubin, rented garage No. 5, the receipt for which was dated June 4, 1965. After securing permission of the lessee the officer entered garage No. 6, and through the slats was able to look into the adjacent garage; the partition between the two garages was constructed of boards and slats separated by 2 or 3 inch cracks permitting a view of the inside of garage No. 5. To better identify the contents, Officer Calderwood directed his flashlight into garage No. 5 through the cracks; open to his view, among other items, were guitars, TV tube caddies, an air conditioner, doctor's bag, drills, four or five tool boxes and a gun butt, serial No. 83842. He wrote these down and returned to the station; from the records he discovered that the gun had been stolen in a theft from a motor vehicle. With this information he obtained a search warrant for garage No. 5.

On November 16, 1965, around 5:45 p.m., Officers Calderwood and Stover went to 464 North Stanley to serve the warrant. It was raining heavily and while waiting in the hallway defendant arrived. They watched him park his car outside the garage, remove a key from his pocket and enter the garage leaving the door open; they then walked up to the garage and observed defendant take a flashlight from his pocket, remove a cardboard box which was on top of the .22 revolver (No. 83842) and another automatic, pick up the revolver, look at it and put it back and place the flashlight on a shelf in the rear

of the garage. Two minutes later the officers entered the garage and placed defendant under arrest for receiving stolen property. In the garage the officers found the .22 caliber revolver, serial No. 83842, stolen from Mary Lou Robbins, the TV tube caddies and a manual with Smerik's name on it stolen from the station wagon driven by him, and on the floor, Dr. Pierce's medical bag. At the time of his arrest defendant resided on Sunset Drive approximately two to three miles from the garage he had rented.

Defendant testified that he and another person rented the garage for storage purposes; he had not been to the garage for two weeks; on his last visit the stolen items were not in the garage; the items were not placed there by him, at his direction or with his consent; four other persons, including two then in the courtroom, had access to the garage which he had rented under an alias in order to have a Jewish name in a Jewish neighborhood. No one else testified on behalf of defendant.

 Officer Calderwood testified that while he and Officer Stover went to the North Stanley address to serve the search warrant, they arrested defendant without serving it; thus, says appellant, the evidence was inadmissible as the product of an unlawful search and seizure. That the search warrant was not served has no bearing on the issue before us, for the search of the garage and seizure of the stolen property were clearly incident to defendant's arrest, and hence were not "unreasonable" within the meaning of the Fourth Amendment if the arrest was lawful. (*People* v. *Webb,* 66 Cal.2d 107, 112 [56 Cal.Rptr. 902, 424 P.2d 342].) In turn, the arrest was lawful if it was predicated on reasonable cause to believe that defendant had committed a felony. (*People* v. *Hillery,* 65 Cal.2d 795, 803 [56 Cal.Rptr. 280, 423 P.2d 208] ; *People* v. *Cockrell,* 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116] ; *People* v. *Stewart,* 62 Cal.2d 571, 577-578 [43 Cal.Rptr. 201, 400 P.2d 97] ; *People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].) "The question of probable cause to justify an arrest without a warrant must be tested by the facts which the record shows were known to the officers at the time the arrest was made." (*People* v. *Talley,* 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564]; *People* v. *Lara,* 67 Cal.2d 365, 373 [62 Cal.Rptr. 586, 432 P.2d 202].) After a full hearing of the matter the trial judge found that the officer had such cause, and there is sufficient evidence

to support his determination. (*People* v. *Talley,* 65 Cal.2d 830, 837 [56 Cal.Rptr. 492, 423 P.2d 564].)

At the time he arrested defendant, Officer Calderwood had in his possession the information obtained in the course of his previous investigation—that defendant, who did not reside at that address, had rented garage No. 5 in June 1965, the garage was not used for vehicle storage and in it were various items, among them a gun known to him to have been stolen in a motor vehicle theft; and had just observed defendant's conduct—parking his car on the street, unlocking garage No. 5 with a key he took from his person, entering and looking at the stolen revolver—and the inside and contents of the garage left open by defendant. Confronted with this, Officer Calderwood at the moment of arrest had reasonable cause to believe that defendant had committed a felony—receipt of stolen property.

Relying mainly on *Bielicki* v. *Superior Court,* 57 Cal.2d 602 [21 Cal.Rptr. 552, 371 P.2d 288], and *Britt* v. *Superior Court,* 58 Cal.2d 469 [24 Cal.Rptr. 849, 374 P.2d 817], appellant complains of the manner in which Officer Calderwood determined that there were stolen items in his garage; he claims that since they were not subject to public view, his observation of them from garage No. 6 through the cracks in the partition constituted an unreasonable search. In *Bielicki,* petitioners were arrested in adjoining booths in a men's room after police who were on the roof observed their activities by looking through a spy pipe installed in the ceiling of the booths below; in *Britt,* the police observed the same activities from a vantage point in the space between the ceiling and the next floor above by means of two vents. In each case, prior to making their observations, the officers had never seen any of the participants and had no grounds for believing they were occupying the booths for anything other than a lawful purpose. The court held that evidence procured in this fashion was the result of a general exploratory search conducted for the sole purpose of discovering evidence of guilt and as such was violative of both federal and state constitutional guarantees. The facts in *Bielicki* and *Britt* differ substantially from those in the case at bar. It is apparent that before Officer Calderwood ever entered garage No. 6 defendant was a suspect, and that the officer had reasonable grounds for believing that defendant was keeping garage No. 5 for other than a lawful purpose. The record shows that when the officer went to the North Stanley address he suspected that a

garage at that location was being used by defendant for, among others, he took defendant's photograph to the Sharagas for identification. Having determined that defendant, in fact, had rented a garage but did not reside on the premises, Officer Calderwood was clearly suspicious of what the garage contained. These circumstances warranted the officer's entry to garage No. 6 (with lessee's permission) to view the inside of garage No. 5; from where he stood in garage No. 6 the contents of the adjacent garage (No. 5) were in plain view through the cracks in the partition. To see that which is in plain sight does not constitute a search. (*People* v. *Martin*, 45 Cal.2d 755, 762 [290 P.2d 855] ; *People* v. *Roberts*, 47 Cal.2d 374, 379 [303 P.2d 721] ; *People* v. *Terry*, 61 Cal.2d 137, 153 [37 Cal.Rptr. 605, 390 P.2d 381].) The contents confirmed the officer's suspicion that defendant was not using the garage for vehicle storage. By use of his flashlight he positively identified various items, and particularly, the serial number of a gun. Under the circumstances, the use of the flashlight to view the contents more closely does not constitute an unlawful entry or search (*People* v. *Linden*, 185 Cal.App.2d 752, 757 [8 Cal.Rptr. 640] ; *People* v. *Carnes*, 173 Cal.App.2d 559, 566 [343 P.2d 626]) ; and Officer Calderwood was not required to blind himself to that which was in plain sight. (*People* v. *Williams*, 169 Cal.App.2d 400, 402 [337 P.2d 134].) Rendering unworthy appellant's argument that the officer's conduct was unreasonable, is the fact that the structure in question was neither defendant's home nor a part of the premises in which he kept his car, but a garage detached both physically and in purpose from his residence. As such, the garage was entitled to the protection of neither the Fourth Amendment of the United States Constitution nor article I, section 19, California Constitution. (*People* v. *Shields*, 232 Cal.App.2d 716, 719 [43 Cal.Rptr. 188].)

 Contending that the evidence is legally insufficient to support his conviction, appellant argues first that there is a variance between the evidence and the accusatory pleading. He was charged with receiving stolen property on September 18, October 26 and October 28, 1965; he now says that lack of proof that he had possession of the property on those dates is fatal. The record shows that defendant rented the garage on June 4, 1965; the property alleged in the information to have been received by defendant on the above dates was actually stolen from various automobiles at those times; and the officer saw some of the stolen items in the garage on November 8,

1965, and all of them on November 16, 1965, the date of arrest. ■ "Of course, the purpose of an information is to notify the accused of the charge he is to meet at the trial. (Pen. Code, § 952; *People* v. *Massey,* 151 Cal.App.2d 623 [312 P.2d 365].) Ordinarily, the prosecution does not need to prove the date alleged therein with exactness if it shows the offense took place before the filing of the information and within the period of limitation. (*People* v. *Cunningham,* 99 Cal.App.2d 296 [221 P.2d 283]) unless time is a material element. [Citations.]" (*People* v. *Krupnick,* 165 Cal.App.2d 755, 764 [332 P.2d 720].) ■ There is here no showing that time itself was a material element, and no alibi was offered; his defense reveals that defendant knew in advance the accusations he had to meet; and he has failed to demonstrate that he was in any way misled in making his defense or that any substantial right on the merits was adversely affected.

■ As to possession and his knowledge that the property was stolen, appellant relies on his "uncontradicted" testimony of nonexclusive occupancy and use of the garage and access by others. Defendant rented the garage under a fictitious name, used it for storage purposes and had in his possession the key which he used to open it. In the light of this, defendant's testimony that four persons, including two who were then in the courtroom, had access to the garage and the absence of testimony from either person, the trial judge could have disbelieved his testimony and found that he alone had use of the premises. On the other hand, if he believed that defendant was not the sole user of the garage, he still could have found that defendant was in actual or constructive possession of the contents, or that defendant was in joint possession of the garage. A finding of joint possession is sufficient to support the judgment. Moreover, possession of the stolen items by defendant was accompanied by suspicious circumstances sufficient to warrant an inference of knowledge that the goods were stolen. Defendant rented the garage several miles from his residence under an assumed name; admittedly it was rented for storage purposes; and property stolen in three separate burglaries from three different victims at three different places and three different times was found in a garage, to which defendant had the key, opened the door, walked in and inspected one of the items.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.