[Crim. No. 14965.    Second Dist., Div. One.    Dec. 23, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. RAMIRO MURIEL, Defendant and Appellant.

Richard S. Buckley, Public Defender, Fred T. Kilbride, John J. Gibbons and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bruce M. Perlman, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J—This is an appeal from a judgment of conviction of possessing heroin.

In an information filed in Los Angeles on April 14, 1967, Robert Hernandez, Ruben Medina and Ramiro Muriel (the latter the appellant herein), were jointly charged with having possessed heroin on March 27, 1967. It was further charged that Medina previously had been convicted of robbery (§ 211, Pen. Code) and that Muriel previously had been convicted of grand theft from the person in Los Angeles in 1954, a violation of section 503 of the Vehicle Code and in 1957, of possessing a United States Treasury check abstracted from stolen mail in 1961 and of escape from the United States Public Health Service Hospital in Texas in 1961. Muriel pleaded not guilty and denied the charged prior convictions. Upon stipulation of all concerned the matter was submitted upon the transcript of the proceedings had at the preliminary examination with each side reserving the right to call witnesses. Each side produced added evidence at the trial. Muriel was found guilty as charged. The first and second charged prior convictions were found to be true as alleged, the third and fourth charged prior convictions upon technical grounds were found

not to be true as charged. Muriel was sentenced to the state prison. A timely notice of appeal was filed.

A résumé of some of the facts is as follows: at about 4:25 p.m. on March 27, 1967, Deputy Sheriff Nelson was patrolling in a marked patrol vehicle eastbound on Rogers Street near Eastern Avenue. The officer observed a Mr. Hernandez coming from a partially lifted or partially open garage door and walking westbound on Rogers Street, and he also saw at the time the legs of three other persons inside the garage who seemingly were engaged in the process of stripping an automobile. The house of the premises which appeared to be vacant, was about 25 feet from the garage. The yard was unkempt, the grass was 6 to 8 inches high and had not been mowed for some time. There was a "for sale" sign posted in plain sight in the center of the side yard area. The officer had knowledge of considerable car stripping in the immediate neighborhood, and he knew also that due to impending freeway construction several of the houses in the vicinity had been moved. The vehicle which the officer saw in the garage appeared to be partially dismantled, resting on its axle on the floor of the garage. The officer stopped his patrol car, exited and approached the garage. He opened the door of the garage and was met by Muriel. The officer asked Muriel to whom the car belonged and for identification. Muriel stated that he did not have to identify himself and that the officer did not have a right to be there. As the officer stepped into the garage to check the registration of the car he again asked Muriel whether the car belonged to him. At this time the officer saw on the rear deck of the car a spoon, a small pile of white powdery substance, a wad of cotton, a plastic cup and a number of burned matches. He then placed Muriel and his companions under arrest and fully advised them of their constitutional rights. It was stipulated in effect that the powdery substance was heroin.

The defense called Mrs. Soto, the sister of Muriel and she testified that the premises belonged to her, and that Muriel lived with her in the house.

■ Appellant now asserts that there was no probable cause to support the arrest. Knowing what the officer knew and seeing what he saw we believe that he in the exercise of ordinary care and prudence could believe and conscientiously entertain an honest and strong suspicion that a crime was being committed when he looked into the partly open garage. He could well have believed that the person who left the

garage had taken a part or parts of the car with him, that the persons in the garage had just recently stolen an automobile and were taking it apart, that they had received stolen property or that they were in the process of removing vehicle parts. ▮ Under these circumstances the officer violated no rights in entering the garage. ▮ Almost immediately upon entering the garage and with no search at all the officer saw upon the back of the car what was obviously heroin and an outfit for injecting it. (See *People* v. *Terry,* 61 Cal.2d 137, 152 [37 Cal.Rptr. 605, 390 P.2d 381] ; *People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855] ; *People* v. *Medina,* 265 Cal. App.2d 703, 708 [71 Cal.Rptr. 586].)

▮ We are persuaded that under the circumstances of this case the garage was not protected by the provisions of the Fourth Amendment to the United States Constitution. The evidence in this case seems to indicate that the garage here housed a partially dismantled and inoperative automobile. There is no evidence that the garage was used in any sense for the comfort and convenience of those of the household. There was no showing by the sister, the supposed owner of the premises, that the garage was used as a part of the household activities, that the garage was necessary or essential for any use by any occupant of the house—the garage had no characteristics which would indicate private usage, and apparently was not in any respect used for living accommodations. The evidence is clear that the garage was used for two purposes, one, to store a broken-down automobile and two, as a place where Muriel and his friends could consume heroin.

What is stated in *People* v. *Medina,* 265 Cal.App.2d 703, 708 [71 Cal.Rptr. 586] (a companion case to this matter) is appropriate, namely : ''The requirements of section 844, Penal Code, simply do not apply here. The premises contemplated in the statute, and as specifically set forth therein, are those of a house, not a detached abandoned garage located 20 feet to the rear of an abandoned dwelling. Under the circumstances, it was reasonable for the deputy to believe that both the house and the garage were abandoned ; he was also justified in the belief that those persons he saw in the garage 'had no business there' and 'were not the occupants of the house,' but car thieves who had chosen the garage because it was abandoned in which to hide and strip a stolen car.

▮ ''Nor is there here an issue of search; when the deputy entered the garage, in plain sight on the rear trunk area of the vehicle were the contraband and narcotic para-

phernalia. These items, later found on the floor where they had fallen when knocked off the trunk deck, were not discovered by the deputy as the result of any search. [Citations.]''

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied January 16, 1969, and appellant's petition for a hearing by the Supreme Court was denied February 19, 1969. Peters, J., was of the opinion that the petition should be granted.