[Crim. No. 15045. Second Dist., Div. Four. Feb. 26, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES EDWARD MURRAY, Defendant and Appellant.

Josef Dubiel, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Mark L. Christiansen, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—Defendant appeals from the judgment entered upon his conviction by a jury of second degree burglary. He contends that his conviction resulted from an illegal search and seizure.

Officers Blair and O'Neil were in a marked police car on routine patrol southbound on Budlong Street, when they saw defendant. It was about 3 o'clock in the afternoon. They observed defendant standing in an alley next to a church. Blair observed that defendant was carrying a yellow and white sack and that, as the patrol car drove past the alley, he stepped back behind a telephone pole.

Deciding to investigate, the officers drove around the corner and entered the alley from the next street. As they drove up the alley, Mr. Zeigler, a resident in the area, approached the car and told them that he had just caught a glimpse of a man hurriedly leave the alley through a gate which led onto the church grounds. He pointed out the gate. Officer Blair walked over to a point where he could see into the church yard. He observed defendant "walking fast like he was in a hurry" along a walk which led to Budlong Street. Defendant was no longer carrying the bag which the officer had previously observed in his hands. The officer stopped defendant and escorted him to the patrol car for questioning.

While Officer O'Neil talked to defendant, Officer Blair went back to where he had observed defendant walking to look for the bag. He recalled that defendant was near a detached garage located on the church grounds when he first saw him. After looking around the grounds he went into the garage, which was unlocked. He found the bag (a laundry bag) in a garbage can in a corner. Inside he observed two sweaters, two pairs of gloves, two radios, a clock and a camera. Upon his return to the patrol car, he asked defendant for some form of identification. Defendant told him that his identification was in his car which was parked over on Budlong; that he would walk over and get it for them.

Officer O'Neil accompanied defendant to his car. When they arrived at the car defendant stated to the officer that he would find the identification in the glove compartment. As O'Neil reached inside, out of the corner of his eye, he observed defendant drop something on the parkway grass

where he was standing. O'Neil called Blair over to investigate. At the spot where defendant had been standing, Blair found what looked like two diamond rings. They were in a small white box which was imbedded in the grass.

At this point defendant was handcuffed, informed that he was under arrest on suspicion of burglary and advised of his constitutional rights. Defendant stated that the rings belonged to him and that they were ''fake.'' He denied knowing anything about the laundry bag or its contents. Later at the police station, after again being advised of his rights and then being informed that Officer Blair had observed him carrying the bag, defendant changed his story. He stated that the items belonged to him and that he was taking them to his girl friend's house.

The rings, the laundry bag and its contents were stolen that day from a residence located on the church premises. The residence had been broken into. The rings and the bag were admitted in evidence against defendant.

 In support of his contention that an illegal search and seizure took place, defendant argues that the officers were not justified in stopping him for questioning. In the discharge of his duties, an officer may stop and question a pedestrian or motorist ''. . . when the circumstances are such as would indicate to a reasonable man in a like position that such a course is necessary to the proper discharge of those duties.'' (*People* v. *One 1960 Cadillac Coupe*, 62 Cal.2d 92, 95-96 [41 Cal.Rptr. 290, 396 P.2d 706]; *People* v. *Perez*, 243 Cal.App.2d 528, 531 [52 Cal.Rptr. 514].) Defendant's conduct was suspicious. He was observed carrying a sack in an alley next to a church. As the police car passed by the alley, he ducked behind a telephone pole. He no longer had the sack when he was next observed by the officers a moment or so later hurriedly walking across the church grounds. Clearly, the circumstances called for the officers to stop him for questioning.

The officers' investigation during the detention-for-questioning period turned up the sack of valuables in the trash can of the garage and the two rings which defendant was observed surreptitiously attempting to dispose of. The officers then had reasonable cause for believing that he had committed a burglary in the area, and were thus justified in arresting him.

Despite defendant's assertion to the contrary, no illegal search took place when the officer entered the garage where the sack was found. The record shows that it was a detached

204

garage which was not utilized for living purposes. Prior to the search the large door of the garage which opened on the alley was closed but unlocked. Mr. Zeigler had informed the officer that the small front door, facing Budlong Street, was "always open." ■ Since the garage could not be regarded as having a "private character for living purposes such as a house," or as "an outbuilding essential to the comfort and personal well-being of a family," it was not constitutionally protected. (*People* v. *Shields*, 232 Cal.App.2d 716, 721 [43 Cal.Rptr. 188]; *People* v. *Alexander*, 253 Cal.App.2d 691, 699 [61 Cal.Rptr. 814]; *People* v. *Lees*, 257 Cal.App.2d 363, 368 [64 Cal.Rptr. 888]; *People* v. *Muriel*, 268 Cal.App.2d 477, 479-480 [74 Cal.Rptr. 44].)

The judgment is affirmed.

Files, P. J., and Dunn, J., concurred.

A petition for a rehearing was denied March 21, 1969, and appellant's petition for a hearing by the Supreme Court was denied April 30, 1969. Peters, J., was of the opinion that the petition should be granted.