274 Cal.App.2d 402 (1969)
THE PEOPLE, Plaintiff and Respondent,
v.
GILBERT HUGH HOBBS, Defendant and Appellant.
Crim. No. 14845. 
California Court of Appeals. Second Dist., Div. Three. 
June 27, 1969.
 Richard S. Trugman under appointment by the Court of Appeal, for Defendant and Appellant.
 Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Elizabeth Miller and Robert F. Katz, Deputy Attorneys General, for Plaintiff and Defendant.
 COBEY, J.
 This is an appeal, by Gilbert H. Hobbs, following a nonjury trial, from a judgment of conviction of the felony of receiving stolen property. (Pen. Code, 496.) The decisive issue is whether the police found the stolen property, a stripped 1964 Chevrolet El Camino pickup truck in appellant's possession by means of an unconstitutional warrantless search of a detached garage located on the lot and about 10 feet from the residence of Hobbs, his wife, and her son. We believe they did.
 The Facts
 Four Los Angeles police officers, led by a Lieutenant Courtial and a Sergeant Halloran, arrived at the Hobbs home at about 5:40 a.m. on May 10, 1967, to arrest Hobbs on a matter not involved in this case and pursuant to an outstanding arrest warrant which they had. After gaining entry the officers informed Mrs. Hobbs that they had a warrant for her husband's arrest and inquired whether he was there. Mrs. *404 Hobbs replied that he had already left for the gas station where he worked. Thereupon the officers asked Mrs. Hobbs whether they might search "the place" for her husband. Reluctantly she consented.
 The officers then glanced into the bedrooms and commenced to search the lot and the outbuildings. These outbuildings included the aforementioned double garage at the end of a driveway from the street, a little tool shed directly behind it and a wood shed on the other side of the back portion of the lot.
 The garage had a rear window and a side window and two front double doors which were padlocked shut. Over the outside of the rear window was a Kaiser mesh screen nailed down from above; inside this window there was a piece of cardboard. However, the cardboard did not cover the window area completely; there was approximately 6 inches of uncovered open window. The unlocked side window could be opened either by lowering it from the top or raising it from the bottom.
 The sergeant circled the garage in an effort to find a way to look inside it. At first he only looked through the open area of the rear window, but when this area proved to be insufficient to give him a satisfactory view of the interior of the garage, he then pushed or held aside the Kaiser screen. He also used his flashlight to illuminate the garage's interior. In this manner he was able to observe inside the garage a 1964 Chevrolet El Camino pickup which appeared to be stripped. The hood was off; there was no motor in the vehicle and its two right wheels and tires did not match. The sergeant concluded that this vehicle might be stolen.
 The sergeant returned to the house to talk to Mrs. Hobbs. He questioned her unsuccessfully about the use she and her husband made of the garage and about its contents. He then asked if he might go into the garage. At first she indicated that he might but then said that he could not when he admitted that he did not have a warrant to search the garage.
 At this point the lieutenant and one other officer left for the service station which was about 2 to 3 miles away. There the lieutenant arrested Hobbs when he arrived at the station at a few minutes to 6. The lieutenant then placed Hobbs in the police car and took him back to his home.
 Meanwhile, the sergeant had informed Mrs. Hobbs that the police were going into the garage. Mrs. Hobbs replied that they could not. The sergeant went back out to the garage and looked inside a second time. This time he used the side window *405 which was unlocked. He raised the bottom part and pushed aside a moving van pad that was covering the window from the inside. With the aid of his flashlight again, he obtained a better look at the El Camino. [fn. 1]
 By this time the lieutenant and his fellow officer had returned with Hobbs and three of the officers were in front of the garage. Mrs. Hobbs came out to them and said her attorney had advised her that the police could not enter the garage. The sergeant replied, "We are going to anyway." He then went over to the police car which was parked in front of the house. He told the lieutenant that he was going to open the garage. Hobbs said, "You stay out of there." But then Hobbs said, "Go ahead. It doesn't belong to me. The guy that lives in the back rents the garage."
 The police then examined the inside of the little tool shed just immediately in back of the garage. They found it to be without plumbing facilities, windows and furnishings. The only things in it were drapes and a sleeping bag.
 The sergeant, accompanied by two of the officers, then picked up a tire iron on the driveway, walked up to the door of the garage and snapped the padlock with it. Upon entering the garage, at about 7 a.m., he examined the El Camino and found it to be almost totally stripped. The only things remaining were the body and the frame, with four old wheels and four old tires and with the identification number removed from the body.
 Almost four months earlier this vehicle, while parked and locked, had been taken sometime during the night from in front of its owner's house in Los Angeles. The owner identified the vehicle at the police impound garage, where it had been taken from Hobbs' garage.
 The Garage Was Constitutionally Protected
 [1] The threshold question presented by this appeal is whether the detached garage was within the protection of the Fourth Amendment to the United States Constitution and article I, section 19 of the California Constitution. We believe *406 that it was. Traditionally, such protection has extended territorially not merely to the home itself, but also at least to the subsidiary outbuildings upon the same lot. [fn. 2] (See Taylor v. United States, 286 U.S. 1, 5 [76 L.Ed. 951, 953, 52 S.Ct. 466]; Drummond v. United States (8th Cir. 1965) 350 F.2d 983, 989.)
 Such an extension in area is somewhat analogous to the protection historically accorded the feudal curtilage. In a highly automotive society, like that of southern California, a detached nearby family garage on the same lot as the family residence itself should be entitled to the same degree of constitutional protection of the privacy of its contents as the home itself enjoys. Moreover, such a garage is a place where the homeowner reasonably expects such privacy to obtain. (See Katz v. United States, 389 U.S. 347, 351 [19 L.Ed.2d 576, 582, 88 S.Ct. 507]; People v. Alexander, 253 Cal.App.2d 691, 700 [61 Cal.Rptr. 814]; People v. Ramsey, 272 Cal.App.2d 302, 309 [77 Cal.Rptr. 249].)
 The Improvement in View
 [2] On appeal appellant challenges for the first time those things which the sergeant did to improve his two external views of the interior of the garage. Since this challenge was not made at the trial level we will not consider it on its merits. But, in passing it by, we note that the use by an officer of his flashlight to improve his view of the interior of a garage or an automobile has been consistently held to be proper in this state (see People v. Lees, 257 Cal.App.2d 363, 368 [64 Cal.Rptr. 888]; People v. Sjosten, 262 Cal.App.2d 539, 546 [68 Cal.Rptr. 832]; People v. Foote, 207 Cal.App.2d 860, 865 [24 Cal.Rptr. 752]; People v. Wright, 153 Cal.App.2d 35, 39 [313 P.2d 868]), that what he did in improving his first view can be justified as a reasonable attempt to execute the arrest warrant, but that his improving his second view would be open to serious question, were the point properly before us. (Cf. People v. Marshall, 69 Cal.2d 51, 57-58 [69 Cal.Rptr. 585, 442 P.2d 665]; People v. Shelton, 60 Cal.2d 740, 746 [36 Cal.Rptr. 433, 388 P.2d 665].) *407
 The Entry Into the Garage Was Unconstitutional
 [3-5] Appellant has challenged throughout this case the constitutionality of the police entry into the garage for the purpose of identifying its contents. This challenge is a valid one. The entry was not incidental to Hobbs' arrest because that occurred miles away and over an hour earlier. It cannot be justified on the basis of consent [fn. 3] because the trial court made no finding on consent (see People v. Henry, 65 Cal.2d 842, 846 [56 Cal.Rptr. 485, 423 P.2d 557]) but instead rested its ruling in favor of the admissibility of the photographs of the stolen vehicle within the garage upon its conclusion that it was reasonable for the officer to investigate further following his views through the windows. In so ruling the trial court apparently was of the view that the entry into the garage for the purpose of searching its interior could be upheld on the basis of probable cause for search. But, absent a grave emergency, a search of a building may not be so justified constitutionally. (See Chapman v. United States, 365 U.S. 610, 613 [5 L.Ed.2d 828, 831, 81 S.Ct. 776]; People v. Marshall, supra, 69 Cal.2d 51, 57, footnote 2; People v. Ramsey, supra, 272 Cal.App.2d 302, 311-312.)
 Our conclusion with respect to the inadmissibility of the photographs of the truck taken as a result of the unconstitutional search of the garage makes it unnecessary for us to pass upon Hobbs' remaining contention that the evidence of his guilt was insufficient. Without the inadmissible evidence Hobbs' conviction cannot stand.
 The judgment is reversed.
 Ford, P. J., and Schweitzer, J., concurred.
NOTES
[fn. 1] 1. Just a few days earlier the sergeant had seen a 1965 El Camino with its engine, and perhaps its transmission, missing at the service station where Hobbs worked. Before going to the Hobbs' home he had found out through the Department of Motor Vehicles that the vehicle at the station was registered to Hobbs. Therefore, when the sergeant saw the 1964 El Camino in the garage with its engine missing he suspected that Hobbs was stripping it in order to equip better his own 1965 El Camino.
[fn. 2] 2. We are aware of the California decisions which have held that detached garages devoted to nonfamily use are not constitutionally protected. (See People v. Jackson, 198 Cal.App.2d 698, 701, 703-704 [18 Cal. Rptr. 214]; People v. Shields, 232 Cal.App.2d 716, 719-721 [43 Cal.Rptr. 188]; People v. Lees, 257 Cal.App.2d 363, 368 [64 Cal.Rptr. 888]; People v. Muriel, 268 Cal.App.2d 477, 480 [74 Cal.Rptr. 44]; People v. Murray, 270 Cal.App.2d 201, 202, 203-204 [75 Cal.Rptr. 625].)
[fn. 3] 3. There is considerable doubt as to whether consent to enter the garage was effectively given. One of the two principal cotenants, Mrs. Hobbs, withheld consent; the other principal cotenant, Hobbs, gave his consent, but under circumstances which rendered it equivocal and perhaps invalid as having been given in submission to an express or implied assertion of authority. (See Parrish v. Civil Service Com., 66 Cal.2d 260, 269 [57 Cal.Rptr. 623, 425 P.2d 223]; People v. Shelton, 60 Cal.2d 740, 746 [36 Cal.Rptr. 433, 388 P.2d 665]; People v. Haven, 59 Cal.2d 713, 720 [31 Cal.Rptr. 47, 381 P.2d 927]; Castaneda v. Superior Court, 59 Cal.2d 439, 442-444 [30 Cal.Rptr. 1, 380 P.2d 641].)