[Crim. No. 9542. In Bank. Mar. 14, 1967.]

In re CHARLEY LUTHER PIKE on Habeas Corpus.

Henry A. Dietz, under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Robert R. Granucci, Deputy Attorneys General, for Respondent.

TOBRINER, J.—Petitioner is under sentence of death for murder. On automatic appeal pursuant to Penal Code section 1239, subdivision (b), this court affirmed the judgment both as to guilt and penalty. (*People* v. *Pike* (1962) 58 Cal.2d 70 [22 Cal.Rptr. 664, 372 P.2d 656].) We denied a rehearing on July 27, 1962. The United States Supreme Court denied certiorari on December 17, 1962 (371 U.S. 941 [9 L.Ed.2d 277, 83 S.Ct. 324]).

Petitioner urges that the judgment, insofar as it fixes the penalty at death, cannot stand in light of the decision of this court in *People* v. *Morse* (1964) 60 Cal.2d 631 [36 Cal. Rptr. 201, 388 P.2d 33]. As petitioner points out, the record discloses that the trial court instructed the jury that a defendant serving a life sentence could be paroled after he had served seven years and that he could be pardoned or obtain a reduction of his sentence by the Governor.[1]

---

[1] The court instructed the jury: "In making your determination as to the penalty to be imposed, you may consider that the laws of California provide that a prisoner sentenced to either death or life imprisonment

We held in *Morse* that such instructions may convert the jury's statutory duty of deciding between life imprisonment and death into choosing between a specified number of years of incarceration and death. The vice, indeed, strikes deeper, because, as we explained in *Morse*, the reference to years of imprisonment invites the jury into an abortive speculation as to the possible duration of the imprisonment. In turn, this preoccupation of the jury may lead it to attempt to predetermine and to prejudge the action of the Adult Authority, whose duty it is to fix the defendant's term in light of his subsequent and realistic rehabilitation, if such rehabilitation occurs.

In this case the adulteration of the jury's function became more pronounced because the judge told the jury that, in substance, the ultimate decision as to the penalty rested with the Governor. Hence, instead of assuming full responsibility for the stern and awesome duty of deciding between life and death, the jury labored under the instruction that a death penalty was subject to further limitation by the executive power.

The error was underscored here not only by an extensive argument of the prosecution as to the possibility of parole and as to the conduct of the Adult Authority[2] but by the prosecu-

---

may be pardoned or may have his sentence reduced by the Governor. A prisoner serving a life sentence may be paroled, but not until he has served at least seven years.''

[2] In argument to the jury at the penalty phase, the prosecutor stated: ''When you were . . . questioned as jurors, I did call to your attention the fact that you have the right to take into consideration the matter of life imprisonment in determining which of the two penalties to select, that you could take into consideration the fact that under the laws of the State of California, that a person who is given life imprisonment is eligible for parole after serving seven calendar years. . . . A lot of people think unless we bring this to the attention of the juries either by argument or instructions, that when a person . . . is sentenced to life imprisonment for murder, that they serve the rest of their lives in prison. But they don't.

''We have in this state what we call an indeterminate sentence law. It is administered under our codes and by what we call the Adult Authority. . . . The Adult Authority is a group of men who attempt to do their job as best they can. They take chances, naturally. . . . And just because somebody else has been paroled and went sour doesn't mean the next fellows who come up should not be appraised according to some standard that they have. And they do make mistakes, as we have learned here.

''But for life imprisonment for murder, it is correct that [a] person does not serve necessarily his life. He is eligible for parole at the end of seven calendar years. Now that doesn't mean he will be paroled. But he is eligible and can be. And the average term of first degree murderers for life imprisonment is twelve to thirteen years. Some of them are entitled to it, no question about it. But they don't serve life imprisonment. I call these things to your attention.''

tion's insistence, in the examination of the veniremen, that they "take into consideration that provision of the law which says a person who gets life imprisonment is eligible for parole at the end of seven calendar years."[3]

We cannot doubt that such error caused prejudice. Indeed, we have held that any such error is "substantial [and] must be deemed to have been prejudicial, and is reversible per se." (*In re Gaines* (1965) 63 Cal.2d 234, 236 [45 Cal.Rptr. 865, 404 P.2d 473] ; *People* v. *Hines* (1964) 61 Cal.2d 164, 169-170 [37 Cal.Rptr. 622, 390 P.2d 398].)█ We have also held that such error may be urged in collateral attack upon judgments which were final prior to the decision in *Morse*. (*In re Gaines, supra,* at p. 236; *In re Jackson* (1964) 61 Cal.2d 500, 505-508 [39 Cal.Rptr. 220, 393 P.2d 420].) Accordingly, we have no alternative but to vacate the judgment as to the death penalty.

█ Petitioner challenges the validity of the judgment of guilt on the ground that the police took statements from him during the four days which followed his arrest, while ignoring his repeated requests for an opportunity to consult with counsel. He urges that, in light of these circumstances, the decisions in *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], *People* v. *Dorado* (1965) 62 Cal. 2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], compel reversal of the judgment of guilt.

Petitioner concedes, however, that no statements elicited from him during this period were introduced at trial; nor does he allege that the taking of these statements impelled him to make his testimonial confession at trial or otherwise aided the prosecution in mounting its case. (See *People* v. *Spencer* (1967) *ante,* p. 158 [57 Cal.Rptr. 163, 424 P.2d

---

[3]The prosecutor addressed the prospective jurors as follows: ". . . I want to call to your attention that one of the penalties in this case, in addition to capital penalty, is life imprisonment. Now, that is what the statute says, that it is life imprisonment. But by reason of other provisions of our statutes, the law provides that a person who is sentenced to or given life in prison for [murder] is eligible for parole at the end of seven calendar years.

"Now, in selecting, if you should sit on that portion of the trial, that stage of the trial, in selecting which penalty it shall be, capital punishment or life imprisonment, will you take into consideration that provision of the law which says a person who gets life imprisonment is eligible for parole at the end of seven calendar years? Will you be willing to take that into consideration, all of you?

"Very well. I see no show of hands. I assume you will be willing to give consideration to that if it occurs."

715] ; *People* v. *Polk* (1965) 63 Cal.2d 443, 448 [47 Cal.Rptr. 1, 406 P.2d 641]; *People* v. *Davis* (1965) 62 Cal.2d 791, 796 [44 Cal.Rptr. 454, 402 P.2d 142].) Accordingly, the decisions in *Escobedo, Dorado,* and *Miranda* do not control.[4] In view of this holding we need not consider other possible answers to petitioner's contention.

The writ is granted as to the penalty trial of petitioner. The remittitur issued in Crim. 7039, *People* v. *Pike* (1962) 58 Cal.2d 70 [22 Cal.Rptr. 664, 372 P.2d 656], is recalled and the judgment imposing the death penalty is reversed insofar as it relates to the penalty. In all other respects the judgment is affirmed. Petitioner is remanded to the custody of the Superior Court of Los Angeles County for a new penalty trial.

Traynor, C. J., Peters, J., Sullivan, J., and Roth, J. pro tem.,* concurred.

BURKE, J.—I dissent from the reversal of the judgment imposing the death penalty. From my examination of the entire cause (as mandated by section 13 of article VI of the California Constitution) I am not of the opinion that it is

---

[4]Petitioner contends, in effect, that since the police obtained statements from him without honoring his request for counsel he cannot now be prosecuted for the offense about which he was questioned. The United States Supreme Court recently rejected a similar contention in *United States* v. *Blue* (1966) 384 U.S. 251 [16 L.Ed.2d 510, 86 S.Ct. 1416]. Blue argued that an indictment against him was properly dismissed because he had previously been compelled to incriminate himself on the criminal charges. The court, reversing the order dismissing the indictment, held: ''Even if we assume that the Government did acquire incriminating evidence in violation of the Fifth Amendment, Blue would at most be entitled to suppress the evidence and its fruits if they were sought to be used against him at trial. While the general common-law practice is to admit evidence despite its illegal origins, this Court in a number of areas has recognized or developed exclusionary rules where evidence has been gained in violation of the accused's rights under the Constitution, federal statutes, or federal rules of procedure. *Weeks* v. *United States,* 232 U.S. 383 [58 L.Ed. 652, 34 S.Ct. 341, L.R.A. 1915B 834]; *Rogers* v. *Richmond,* 365 U.S. 534 [5 L.Ed.2d 760, 81 S.Ct. 735]; *Mapp* v. *Ohio,* 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933]; *Nardone* v. *United States,* 308 U.S. 338 [84 L.Ed. 307, 60 S.Ct. 266]; *Mallory* v. *United States,* 354 U.S. 449 [1 L.Ed.2d 1479, 77 S.Ct. 1356]. Our numerous precedents ordering the exclusion of such illegally obtained evidence assume implicitly that the remedy does not extend to barring the prosecution altogether. So drastic a step might advance marginally some of the ends served by exclusionary rules, but it would also increase to an intolerable degree interference with the public interest in having the guilty brought to book.'' (384 U.S. at p. 255; footnote omitted.)

*Assigned by the Chairman of the Judicial Council.

reasonably probable that a result more favorable to the defendant would have been reached in the absence of the errors set forth in the majority opinion. (See *People* v. *Watson,* 46 Cal. 2d 818, 836 [299 P.2d 243], and the dissents in *People* v. *Luker,* 63 Cal.2d 464, 479 [47 Cal.Rptr. 209, 407 P.2d 9]; *In re Spencer,* 63 Cal.2d 400, 414 [46 Cal.Rptr. 753, 406 P.2d 33]; *In re Gaines,* 63 Cal.2d 234, 240 [45 Cal.Rptr. 865, 404 P.2d 473]; *People* v. *Hillery,* 62 Cal.2d 692, 714 [44 Cal.Rptr. 30, 401 P.2d 382]; *In re Lessard,* 62 Cal.2d 497, 513 [42 Cal.Rptr. 583, 399 P.2d 39]; and *People* v. *Terry,* 57 Cal.2d 538, 569, 572 [21 Cal.Rptr. 185, 370 P.2d 985].) In all other respects I concur in the opinion of the majority.

McComb, J., concurred.