[Crim. No. 14599.   Second Dist., Div. One.   Sept. 16, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. RUBEN MACIAS MEDINA, Defendant and Appellant.

Joseph Amato, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and John C. Hamilton, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was charged with two others, Hernandez and Muriel, with possession of heroin (§ 11500, Health & Saf. Code) and a prior felony conviction (§ 211, Pen. Code). Defendant and Hernandez were tried separately from Muriel; the court found defendant guilty as charged and the allegation of the prior felony conviction to be true, and acquitted Hernandez. Defendant appeals from the judgment.

Deputy Nelson had been advised through official briefings

that most of the residences in the immediate vicinity of 1589 Helen Drive were to be wrecked or moved for widening and rerouting of the San Bernardino Freeway; subsequently in patrolling the area he had observed that many of the houses were already vacant or boarded up and on some there were "For Sale" signs. On March 27, 1967, around 4:25 p.m., Deputies Nelson and Ablott, in a marked patrol car, were proceeding east on Rogers Street; as they approached within 25 feet of a garage which was located 20 feet to the rear and to the west of a house at 1589 Helen Drive, Deputy Nelson saw Hernandez open the garage door halfway (3 or 4 feet), stoop down under the door, leave the garage and hurriedly walk west on Rogers toward an alley. Before the door closed behind Hernandez, Deputy Nelson, who then was about 5 feet away, observed through the half open door three persons, from the waist down, inside the garage standing about 4 feet from a white vehicle parked against the west wall; he could see the grill, bumper and hood of the car which appeared to be resting on the frame or axle on the floor of the garage.

The lawn grass at 1589 Helen was about 8 inches high and in need of mowing, a "For Sale" sign was in the yard, the house, an old faded green, was in need of paint and it appeared to be abandoned. Deputy Nelson testified that based "on the fact that the area, being partially deserted, has a high rate of stolen vehicle recoveries and vehicle stripping" and on his observation of "the persons inside of an abandoned garage with a vehicle which appeared to be partially dismantled, or the tires or wheels removed . . . ," it was then his opinion "that someone was inside this vacated garage probably stripping the vehicle which was parked there"; further, "it was my opinion that they had no business there; that they were not occupants of the house. . . . I thought they were car strippers in this abandoned garage. . . . I thought that they had probably picked it out as being abandoned, and the door was unlocked, so this would be a good place to park a stolen car and strip items from that car." Deputy Nelson testified he thought that the persons inside were car thieves—"felons"—hiding their stolen vehicle in the garage; "[a]ny time that there is a sheltered place, they will use it to strip cars."

Deputy Nelson told his partner to hold Hernandez; Deputy Ablott did so saying, "Wait, I want to talk to you," but did not place him under arrest at that time. Deputy Nelson went

to the door of the garage, opened it and stepped inside confronting defendant, Muriel and an unidentified female; Muriel said, "This is private property" or "This is my house." The deputy observed on the rear trunk area of the car a small pile of a white powdery substance approximately three-quarters of an inch in diameter and one-half inch high, an eye dropper, needle, matches, spoon and pocket knife; he ushered all of the persons against the wall and as he started to advise them of their constitutional rights defendant ran from the garage. Deputy Nelson pursued and overtook defendant; when they returned to the garage, the heroin and other items had been knocked off the trunk deck onto the floor and the female was gone. He recovered from the floor a small plastic tube containing heroin, a quarter-spoon measuring spoon containing a morphine derivative residue, a tablespoon containing a brownish residue and other items, including cellophane paper, burned matches, match book, tissue paper, blue balloon, a torn condom and a number 25 hypodermic needle.

Appellant's contention that there was lack of probable cause for his arrest prior to the opening of the garage finds no support in the record. A police officer may make an arrest without a warrant "1. Whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence." or "3. Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, . . ." (§ 836, Pen. Code.) There is no exact formula for the determination of reasonableness and each case must be decided on its own facts and circumstances and on the total atmosphere of the case. (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].)

"Reasonable or probable cause is shown if a man of ordinary care and prudence would be led to believe and conscientiously entertain an honest and strong suspicion that the accused is guilty. (*People* v. *Torres,* 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823]; *People* v. *Fischer,* 49 Cal.2d 442, 446 [317 P.2d 967].)" (*People* v. *Cockrell,* 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116]; *People* v. *Stewart,* 62 Cal.2d 571, 577-578 [43 Cal.Rptr. 201, 400 P.2d 97]; *People* v. *Hillery,* 65 Cal.2d 795, 803 [56 Cal.Rptr. 280, 423 P.2d 208].)

The undisputed evidence establishes that before Deputy Nelson opened the garage door he had reasonable cause to believe that the persons in the garage had committed

a felony—stolen an automobile (§§ 487, subd. 3, 489, Pen. Code) or received stolen property (§ 496, Pen. Code), and/or were in the process of committing a public offense in his presence — removing parts from a vehicle (§ 10852, Veh. Code). Prior to entering the area, Deputy Nelson had information that the residences therein were to be wrecked or removed for freeway widening and that the area, being partially deserted, had a high rate of stolen vehicle recoveries and vehicle stripping. Thereafter he had noticed in the area many vacant or boarded up houses and some on which were "For Sale" signs. Immediately prior to entering the garage located 20 feet to the rear of a house at 1589 Helen Drive Deputy Nelson noted that the house appeared to be abandoned; he observed Hernandez open the garage door (3 or 4 feet), stoop down under the door and hurriedly leave; and, standing 5 feet away, he saw through the half open door three persons standing inside the garage approximately 4 feet from a white vehicle which appeared to be partially dismantled. Thus, based on the foregoing Deputy Nelson, before opening the door, formed the opinion that the three inside the garage were not occupants of the house, the garage was abandoned and "would be a good place to park a stolen car" and they were car thieves—felons—hiding their stolen vehicle in the garage; he also formed the opinion "that someone was inside this vacated garage, possibly stripping the vehicle which was parked there" and "thought they were car strippers in this abandoned garage . . . a good place to park a stolen car and strip items from that car." The record justifies as reasonable his belief that the three had stolen the car and were stripping it. While car stripping is a misdemeanor (§§ 10852, 40000, Veh. Code), it is nevertheless a public offense which Deputy Nelson had reasonable cause to believe was being committed in his presence. (§ 836, subd. 1, Pen. Code; *Coverstone* v. *Davies,* 38 Cal.2d 315, 319-322 [239 P.2d 876].)

When the deputy entered the garage he had no warrant for arrest or for search of the premises; he neither knocked on the door nor announced himself or his purpose before entering. Thus, says appellant, the evidence should have been excluded for the deputy's failure to comply with the provisions of section 844, Penal Code.[1] Deputy Nelson

---

[1]"To make an arrest . . . a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

testified that he ''didn't think it was necessary'' to announce himself prior to opening the door, and we agree. The requirements of section 844, Penal Code, simply do not apply here. The premises contemplated in the statute, and as specifically set forth therein, are those of a house, not a detached abandoned garage located 20 feet to the rear of an abandoned dwelling. Under the circumstances, it was reasonable for the deputy to believe that both the house and the garage were abandoned; he was also justified in the belief that those persons he saw in the garage ''had no business there'' and ''were not the occupants of the house,'' but car thieves who had chosen the garage because it was abandoned in which to hide and strip a stolen car.

█ Nor is there here an issue of search; when the deputy entered the garage, in plain sight on the rear trunk area of the vehicle were the contraband and narcotic paraphernalia. These items, later found on the floor where they had fallen when knocked off the trunk deck, were not discovered by the deputy as the result of any search. (*People* v. *Terry,* 61 Cal.2d 137, 152 [37 Cal.Rptr. 605, 390 P.2d 381]; *People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855]; *People* v. *Lamberson,* 235 Cal.App.2d 856, 859 [45 Cal.Rptr. 563].)

█ Finally, appellant contends that while he was advised of his constitutional rights by Deputy Henry and specifically that he could have the public defender at ''any stage of the proceedings'' at no expense to himself, the latter was not an adequate warning of his right to counsel because it did not sufficiently apprise him that he had a right to counsel ''prior to questioning''; and that his ''incriminating statement that [he] went to one of the codefendant's car to 'go score' '' should not have been admitted. The adequacy of the warning is purely academic for when Deputy Henry testified that defendant ''stated that he met the other two persons at Carmelita and Michigan, . . . and they went to Hernandez' car to go score; that he—,'' defense counsel interposed an objection (on another ground) and the court ordered the testimony stricken; thus defendant's statement was never considered by the trial court on the issue of guilt. No statements elicited from defendant were before the trial court; and since he did not testify, defendant cannot allege that the taking of the statement impelled him to make a testimonial confession at the trial; nor does he assert that anything he told the officers led to the acquisition of any evidence against him. According-

. . .

ly, the decision in *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], does not control. (*In re Pike,* 66 Cal.2d 170, 173-174 [57 Cal.Rptr. 172, 424 P.2d 724].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied October 10, 1968, and appellant's petition for a hearing by the Supreme Court was denied November 27, 1968.