[Civ. No. 20734. Fourth Dist., Div. Two. Mar. 21, 1980.]

CLAIRE BRYANT KLEMME, Plaintiff and Respondent, v.
HOAG MEMORIAL HOSPITAL PRESBYTERIAN et al.,
Defendants and Appellants.

Counsel

Bonne, Jones, Bridges, Mueller & O'Keefe, Horvitz, Greines & Poster, Ellis J. Horvitz, Marc J. Poster and John L. Klein for Defendants and Appellants.

Horton, Barbaro & Reilly and Jay Cordell Horton for Plaintiff and Respondent.

Opinion

**KAUFMAN, J.**— This appeal raises the question, said to be a recurring problem in the trial courts, whether in a negligence action involving multiple defendants, the trial court may, at the plaintiff's request and over the defendants' objections, direct the jury to apportion comparative fault among the defendants by special verdict. We conclude that it may not and that the trial court in the case at bench erred in requiring the jury to apportion fault among the defendants and an "other" nonparty. The more difficult question is whether the error was prejudicial requiring reversal of the judgment. We have concluded that it was not.

On August 4, 1973, plaintiff, while an in-patient at Hoag Memorial Hospital Presbyterian, fell and sustained severe bodily injuries. At the time of the accident plaintiff was under the care of defendants Hansel D. Benvenuti, M.D. and J. Robert Egan, M.D., for diagnosis and treatment of intestinal and bowel dysfunction. Plaintiff's suit for medical malpractice alleged that her fall and injury resulted from the negligent management of her case by the defendant doctors and negligent care and attendance by employees of the hospital. Hoag Hospital was originally named as a defendant and was a litigant at the commencement of

trial. However, during the presentation of plaintiff's evidence, a settlement between plaintiff and the hospital was effected resulting in hospital's paying plaintiff $50,000.

The sufficiency of the evidence is not in dispute. Indeed, the appeal is taken upon a partial reporter's transcript, as augmented, that includes almost none of the testimony. Defendants' contention is that the issue of comparative fault among the defendants was irrelevant to the case; that the trial court erred in submitting to the jury a special verdict form that required the jury to apportion fault not only as between the defendant doctors but as between them and Hoag Hospital which was dismissed as a party defendant when it settled with plaintiff; and that the prejudicial effect of this error was exacerbated and insured by a series of other errors and irregularities by which the jury was led to believe that proportional fault was the equivalent of proportional liability, weakening its sense of responsibility in determining the issue of liability.

After a lengthy *in camera* discussion of the instructions and verdict forms to be given the jury, the trial court decided to utilize a special verdict form requiring the jury to respond to eight inquiries or issues.[1] The first four issues were whether the respective defendant doctors were negligent and, if so, whether their respective negligence was a proximate cause of plaintiff's injury. The next two issues were whether plaintiff was herself negligent and, if so, whether her negligence was a contributing proximate cause of her injury. The seventh issue was the total amount of damages suffered by plaintiff. Issue number eight read: "Assuming that 100% represents the combined negligence of the plaintiff and of the defendants and of other persons whose negligence contributed as a proximate cause to plaintiff's injury, what proportion of such combined negligence is attributable to the plaintiff on the one hand and what proportion is attributable to the defendants and such other persons on the other hand?" There immediately followed four lines upon which the jury was to indicate the percentage of fault attributed to plaintiff, defendant Benvenuti, defendant Egan, and "such other persons."

---

[1]The specificity of defendants' objection to the court's use of this special verdict form left something to be desired. Nevertheless, during the *in camera* discussion defendants made known their preference for a general verdict based on BAJI Nos. 14.90 and 15.03 (6th ed. 1977), discussed *infra,* and perhaps, the special findings form found in BAJI No. 14.94 (6th ed. 1977) which asks the jury to apportion fault only as between the plaintiff on the one hand and all defendants and "such other persons" collectively on the other.

The jury responded "Yes" to the six issues relating to the negligence of the defendant doctors and plaintiff herself and to whether such negligence constituted a proximate cause of plaintiff's injury. In response to the seventh issue the jury fixed plaintiff's total damages at $225,000. In response to the eighth issue the jury apportioned negligence 5 percent to plaintiff, 27 percent to defendant Benvenuti, 3 percent to defendant Egan, and 65 percent to "such other persons."

When it decided to utilize the special verdict form, the court also determined that it would not render to the jury two instructions requested by defendants, BAJI No. 15.03 (6th ed. 1977) and BAJI No. 14.90 (6th ed. 1977). The former would have instructed the jury that if it found plaintiff entitled to recover from more than one defendant, it must return a verdict in a single sum against the defendants found liable. The latter would have directed that if the jury found plaintiff's injury was proximately caused by a combination of negligence of one or more defendants and contributory negligence of the plaintiff it should first determine the total amount of plaintiff's damages without regard to plaintiff's contributory negligence, then determine what proportion was attributable to the plaintiff "of the total combined negligence of the plaintiff and of the defendants and of all other persons whose negligence proximately contributed to the injury," then reduce the total amount of plaintiff's damages by the proportion or percentage of negligence attributable to the plaintiff, and finally report the resulting amount, "after making such reduction," as its verdict.

Defendants are correct that their proportionate fault and that of Hoag Hospital were irrelevant and not in issue and that plaintiff had no legitimate interest in having the jury determine the proportionate fault of defendants and "such other persons" *inter se*. ■ Notwithstanding the substitution of comparative fault principles for the doctrine of contributory negligence, concurrent tortfeasors remain jointly and severally liable for payment of the entire judgment. (*American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 582-583, 586-590 [146 Cal.Rptr. 182, 578 P.2d 899].) While concurrent tortfeasors may have claims for partial indemnity among themselves, they are not required to litigate their claims, and even if they decide to litigate them, they are not required to litigate them in the main action; a cause of action for implied indemnity does not accrue or come into existence until the indemnitee has suffered actual loss through payment. (*E. L. White, Inc. v. City of Huntington Beach* (1978) 21 Cal.3d 497, 506 [146 Cal.Rptr. 614, 579 P.2d 505].) ■ Here, Hoag Hospital was dismissed as a

party to the action when it settled with plaintiff, and defendants did not seek to litigate any claims for indemnity they might have as between themselves or as against Hoag Hospital. Accordingly, the proportionate fault of defendants and Hoag Hospital was not in issue. Utilization of a special verdict rather than a general verdict is a matter committed to the sound judicial discretion of the trial court; however, the court may direct the jury to find a special verdict only upon issues in the case. (Code Civ. Proc., § 625.)

In support of the trial court's utilization of the special verdict form plaintiff makes a number of arguments relating to the general desirability of special verdicts and avoiding multiplicity of litigation. These arguments require little discussion, however, for regardless of how desirable special verdicts may be in the abstract, there is no authority for the use of a special verdict to determine matters not at issue in the case. Similarly, the avoidance of a multiplicity of litigation is highly desirable, but it is not the prerogative of the plaintiff to decide for the defendants whether and when defendants' potential rights to implied indemnity shall be litigated. The defendants may well decide not to litigate their potential rights at all, eliminating any problem of multiplicity of litigation. Moreover, when one or more of the concurrent tortfeasors is not before the court and will not be bound by the special verdict, the use of such a verdict apportioning fault between the defendants *inter se* and "such other persons" will not materially aid in preventing a multiplicity of actions. In fact, it might well serve to complicate any subsequent litigation by introducing potential claims of collateral estoppel.

We conclude, therefore, that the use of a special verdict apportioning fault among defendants and "such other persons" over the objection of defendants was error. We conclude also that it was error not to render to the jury BAJI instruction Nos. 14.90 and 15.03. The latter error, however, was not separate, it was interrelated with and flowed from the decision to use the special verdict form. The language of both instructions clearly indicates that they are inappropriate when a jury is to return a special verdict only, and the use note to BAJI 14.90 expressly states that that instruction is not to be used where the jury is to return a special verdict only.

The more difficult question is whether the error was prejudicial, requiring reversal. The real vice of the error, defendants contend, is that in being required to apportion fault the jury was led to believe it was

also apportioning liability, weakening its sense of responsibility in determining the issue of liability. (Cf. *Neumann* v. *Bishop* (1976) 59 Cal.App.3d 451, 487 [130 Cal.Rptr. 786]; *Hart* v. *Wielt* (1970) 4 Cal. App.3d 224, 234 [84 Cal.Rptr. 220]; see also *In re Pike* (1967) 66 Cal.2d 170, 172 [57 Cal.Rptr. 172, 424 P.2d 724]; *People* v. *Morse* (1964) 60 Cal.2d 631, 649-650 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810].) Plaintiff contends that defendants' claim of prejudice is wholly speculative, disregards the presumption that jurors adhere to the court's instructions, and is not supported by a single shred of evidence in the record. If nothing more appeared, we would agree with plaintiff without further discussion. However, defendants call our attention to a number of things that occurred during the trial that they urge substantiate their claim that the jury was misled into believing that proportional fault was the equivalent of proportional liability.

First, as evidence that the jurors were in fact misled into believing that in apportioning fault they were also apportioning liability, defendants point out that in the midst of its deliberations the jury sent a note to the court reading: "If the Jury specifies a % of *liability* to the 'other' catagory [*sic*] is that 'Other' party or parties required to compensate the plaintiff?" (Italics added.) A jury's inquiring about an issue concerning which they have been erroneously instructed is a persuasive indication, defendants urge, that the jurors were confused and that the error was prejudicial. (See *LeMons* v. *Regents of University of California* (1978) 21 Cal.3d 869, 876 [148 Cal.Rptr. 355, 582 P.2d 946]; *Krouse* v. *Graham* (1977) 19 Cal.3d 59, 72 [137 Cal.Rptr. 863, 562 P.2d 1022]; *Carr* v. *Pacific Tel. Co.* (1972) 26 Cal.App.3d 537, 544 [103 Cal.Rptr. 120].)

This state of affairs, defendants assert, was brought about by plaintiff's insistence on use of the special verdict form apportioning fault among defendants and "such other persons" when that was not in issue and in plaintiff's counsel making reference on numerous occasions in his argument to one or the other of the defendant's percentage or proportion of responsibility, fault and, several times, liability.[2] Defendants

---

[2] A number of illustrative excerpts from the argument are quoted, e.g.: "you consider liability and if you find any portion of liability on any of the defendants that are involved in this case... then you go on to the second part of the case, which is damages"; "I think they [Hoag Hospital] bear a percentage of the responsibility for this accident, just as I do Dr. Benvenuti and Dr. Egan"; "Don't you think, reasonably, that accounts for a couple percentage points, the fact that she was weak"; "I think that is preposterous and I think that that is some percentage point on the part of the doctors"; "But I

urge that the insistence by plaintiff's counsel on use of the special verdict form and these statements made in his argument manifest a conscious, deliberate attempt to mislead the jury. Defendants then invoke authorities holding or otherwise indicating that where a knowledgeable attorney consciously and deliberately attempts to confuse or mislead the jury and is apparently successful in doing so, the error must be deemed prejudicial and the judgment must be reversed to preserve the integrity of the trial process. (E.g., *Love* v. *Wolf* (1967) 226 Cal.App.2d 378, 393-394 [38 Cal.Rptr. 183]; but cf. *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 924-925 [148 Cal.Rptr. 389, 582 P.2d 980].)

Defendants further point out that, in response to the jury's inquiry about specifying a percentage of liability, the court responded: "You are to make your finding of the *percentage of liability* without regard to whether other parties are required to compensate the plaintiff. This matter has already been resolved as to Hoag Memorial Hospital."[3] (Italics added.)

Defendants urge that all of the foregoing coupled with the court's erroneous utilization of the special verdict form in the first instance and its refusal to render to the jury what defendants refer to as the "clarifying" instructions requested by them (BAJI Nos. 14.90 and 15.03, *ante*) must be considered to have resulted in prejudice. Defendants remind us that where it seems probable that the jury's verdict may have been based upon an erroneous instruction, the error should be deemed prejudicial, and a reviewing court should not speculate on the basis of the verdict. (*Henderson* v. *Harnischfeger Corp.* (1974) 12 Cal.3d 663, 670 [117 Cal.Rptr. 1, 527 P.2d 353]; *Harpst* v. *Kirkpatrick* (1972) 26 Cal. App.3d 482, 487 [102 Cal.Rptr. 621]; accord: *LeMons* v. *Regents of University of California, supra*, 21 Cal.3d at p. 876.)

The only specific argument to the contrary made by plaintiff is that the trial court instructed the jury in the language of the special verdict

---

think Dr. Egan was a good doctor, is a good doctor. I think he made a couple of mistakes and I think they are the kind of mistakes upon which a percentage of liability is appropriate."

[3]Defendants urge that the court itself felt that in apportioning fault the jury was also apportioning liability because not only did the court use the word "liability" in its response to the jury's question, but in the judgment as originally entered, liability of the defendants *was* apportioned in accordance with the jury's determination of the percentage of fault attributable to each.

form, adding a word or two as to how to use it, and that the form required the jury to determine whether or not each defendant was negligent before undertaking the task of apportioning fault. Plaintiff asserts that since negligence was determined before apportionment was considered, defendant could not have been prejudiced with respect to the issue of liability. We are unable to agree with this argument. It is true that the arrangement of the questions on the special verdict form called for an answer to the questions concerning the negligence of each defendant before any apportionment of fault was called for. However, the jury was not told that it was to determine the issues in the order in which they were set forth on the form. To the contrary, the court instructed the jury: "You are to answer these questions only after deliberation and consideration on all the issues. . . ."

Nevertheless, we have concluded that it is not probable that these errors and irregularities had any significant effect upon the jury's verdict. The jury's inquiry whether its assigning a percentage of *liability* to "such other persons" would require payment to plaintiff does suggest that the jurors were thinking in terms of liability rather than fault. The court's response to the jury in terms of the jury's "findings of the percentage of liability" certainly did nothing to clarify the matter, and that together with the form of the judgment originally entered purporting to apportion liability in conformity with the apportionment of fault must be conceded to support defendants' argument that even the court was confused. (See fn. 3, *ante.*)

On the other hand, defendants themselves must share responsibility for the confusion of which they complain. Immediately before responding to the jury's inquiry, the court indicated to counsel the exact words it proposed to use in responding to the jury including the phrase "percentage of liability." Defense counsel did not object or call the court's attention to the misuse of the word "liability." On the contrary, counsel's statements seemingly expressed approval of the court's proposed response.

Similarly, although defendants refer to the instructions requested by them and refused by the court (BAJI Nos. 14.90 and 15.03) as "clarifying" instructions, in truth they were not. Once the court indicated its intention to use a special verdict form, the language of the instructions as offered undoubtedly would have confused the jury beyond hope. Both instructions related to the jury's returning a verdict in a fixed dollar amount. It may well be that the language of the instructions could have

been modified or that other instructions might have been offered that would have clarified the matter of concern to defendants, but no such instructions were offered by them.

Were we persuaded that counsel for plaintiff engaged in a deliberate attempt to mislead the jury, we would be inclined to treat the error as prejudicial, for we are in complete accord with the court in *Love* v. *Wolf, supra*, 226 Cal.App.2d at pages 393-394, that deliberate attempts to mislead the jury must be treated as prejudicial to preserve the integrity of the trial process. However, we have read both the *in camera* discussion concerning the form of the verdict to be furnished to the jury and the argument of plaintiff's attorney at the conclusion of the trial and we are not persuaded that counsel engaged in a deliberate attempt to mislead the jury. The characterization as "insistent" of plaintiff's counsel's request that the special verdict form be utilized is not really accurate. Counsel prepared the form apparently as one of several alternative forms to be used, and while there is no question that he favored its use, his views were not expressed in an insistent manner. In fact, the whole argument is best described as a discussion.

While it is true as defendants assert that in argument counsel made numerous references to proportionate responsibility, fault and even liability, much of what counsel said was in response to the argument of defendants that the negligence of Hoag Hospital and its employees was solely responsible for plaintiff's unfortunate injury. In addition, we think a good deal of what went on at trial is explained in part by the fact that the concluding portion of the trial occurred during the first few days of August 1978, only a few months after the decision in *American Motorcycle Assn.* v. *Superior Court, supra*, 20 Cal.3d 578. As we have already noted, defense counsel made no objection to the court's announcement that it intended to respond to the jury's question using the phrase "percentage of liability," and we further note that defense counsel himself in argument to the jury referred to apportioning liability. With specific reference to the special verdict form, counsel at one point said to the jury: "Please read them carefully and you will see on the back page of one of the forms that there is an opportunity for you to insert a number percentage of where you believe the *liability* or the fault should be apportioned in this case." (Italics added.) And, of course, there was no objection whatever made by defense counsel to any of the portions of the argument of plaintiff's attorney now claimed to have been misleading.

Finally, while defendants assert that the liability of Drs. Benvenuti and Egan was questionable, the jury apparently did not concur in that assessment. Of the total contributive fault, it assigned 30 percent to defendants, 27 percent to Dr. Benvenuti and 3 percent to Dr. Egan. We can understand the argument that a finding of 3 percent contributive fault indicates marginal liability, but it is otherwise with respect to 27 percent. The jury must have concluded that negligence on the part of Dr. Benvenuti was a very substantial contributing cause of the accident. By happenstance, perhaps, the assignment of 3 percent fault to Dr. Egan can be traced with substantial certainty to testimony by Dr. Egan that responsibility for the care of plaintiff lay 90 percent with Dr. Benvenuti as the primary managing physician and 10 percent with himself as consultant. The total contributive fault of both defendants was assessed by the jury at 30 percent. Ninety percent of 30 percent is 27 percent; 10 percent of 30 percent is 3 percent.

Although in responding to the juror's question whether Hoag Hospital would be required to compensate plaintiff if a percentage of liability were assigned to it by the jury the court mistakenly used in its response the phrase "percentage of liability," nevertheless the court did inform the jury that it was to make its apportionment "without regard to whether other parties are required to compensate the plaintiff." It would be reasonable to believe under all the circumstances that the jury understood this to mean that they were not to be concerned with who would be required to pay what amount and that they paid no further attention to that matter.

The judgment will be affirmed. However, defendants make another contention which plaintiff admits is meritorious, namely, that the court erred in failing to credit against the principal amount of the judgment the $50,000 paid by Hoag Memorial Hospital in settlement. That error, however, may be corrected by us by modifying the judgment.

Accordingly, the corrected judgment on special verdict dated and filed October 6, 1978, is modified to provide that defendants are entitled to credit in the amount of $50,000, reducing the principal amount to which plaintiff is entitled to $163,750. As so modified the judgment

is affirmed. In the interest of justice, the respective parties shall bear their own costs on appeal.

Tamura, Acting P. J., and Campbell, J.,* concurred.

A petition for a rehearing was denied April 10, 1980, and the opinion was modified to read as printed above.

*Assigned by the Chairperson of the Judicial Council.